**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**KATHERINE F.,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

**Case No. 1:21-cv-00823-TPK**

**OPINION AND ORDER**

**OPINION AND ORDER**

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on October 10, 2021, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 9) and the Commissioner has filed a similar motion (Doc. 12). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

## I. BACKGROUND

Plaintiff filed her application for benefits on November 2, 2015, alleging that she became disabled on March 17, 2015. After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on November 16, 2017. Plaintiff and a vocational expert, Timothy P. Janikowski, testified at the last hearing. Subsequently, the ALJ denied Plaintiff's application and the Appeals Council declined to review it. Plaintiff then filed an action in this Court challenging the adverse decision, and, by way of a stipulation and order filed on January 6, 2020, the Court remanded the case to the Commissioner for further proceedings. *See* Case No. 1:18-cv-1444, Doc. 16.

After remand, a second administrative hearing was held on January 22, 2021. Plaintiff and a different vocational expert, Brian Daly, testified at that hearing. The Administrative Law Judge issued an unfavorable decision on April 9, 2021. He first found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Next, the ALJ concluded that Plaintiff suffered from severe impairments including major depressive disorder and generalized anxiety disorder. However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform a full range of work at all exertional levels. Additionally, he

found that Plaintiff was able to perform only simple, repetitive, one- and two-step tasks but not complex work. Also, she could have no public contact but could interact occasionally with supervisors, and she had to avoid pulmonary irritants.

The ALJ further concluded that Plaintiff had no past relevant work. Next, relying on the vocational expert's testimony, the ALJ determined that, with the limitations described above, Plaintiff could perform light unskilled jobs such as routing clerk and photocopy machine operator. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises two claims of error, stated as follows: (1) "The ALJ improperly picked and chose, mischaracterizing the evidence in rejecting LCSW Springer's treating source opinion"; and (2) "Despite giving great weight to the state agency reviewer's opinion, the ALJ did not incorporate the limitations opined therein, and the ALJ erred in giving more weight to this reviewing opinion than the treating opinion." *See* Plaintiff's memorandum, Doc. 9-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 36 years old at the time of the initial administrative hearing, first testified that she had obtained a college degree in 2013 and that she had not worked since 2015, although she had applied for several jobs in that time frame. She said she had asthma as well as year-round allergies and that dust was a major problem for her. She also suffered from major depression with episodes that could last for up to a week. Plaintiff also described anxiety symptoms for which she took medication, but said that if she had a panic attack it could last all day. She was able to talk to people on the phone or online but rarely interacted with others in person. She had lost a job due to her inability to get along with her supervisors.

In terms of treatment, Plaintiff not only took medication but saw a therapist regularly, and also saw a nurse practitioner to get prescriptions for her medications. She had been hospitalized for mental health reasons in 2015. Plaintiff said she was able to follow both oral and written instructions and could maintain attention and concentration for periods of time. She could do household chores and manage money as well as drive and shop for groceries. Lastly, she said her depression had gotten worse since she was hospitalized.

At the second administrative hearing, Plaintiff reiterated that it was her anxiety and depression that kept her from working. She also had chronic foot pain from having broken both her feet. That problem limited her ability to both stand and walk for extended periods. She testified that she had been receiving mental health treatment for ten years and that it included cognitive behavioral therapy and medication. Her depressive episodes occurred several times per year and lasted for two or three weeks at a time, and she continued to have anxiety when

being around people who were unfamiliar to her. She also lacked motivation to do household activities on a regular basis. Plaintiff said that her daily routine consisted of reading, watching television, and playing computer games, and that she rarely left the house.

Brian Daly was the vocational expert who testified at the second administrative hearing. He first classified Plaintiff's past work, noting that the general clerk position was a light job and the receptionist position was sedentary work. He was then asked questions about a hypothetical person who had no exertional limitations but who, from a mental standpoint, could not do complex work, could not interact with the public at all, and could interact with others in the workplace only occasionally. That person also had to avoid pulmonary irritants. In response, he testified that such a person could work as a routing clerk or a photocopy machine operator, and he gave numbers for those jobs as they existed in the national economy. That would not be so, however, if the person were absent two or more days per month or off task 20% or more of the time, or if he or she were occasionally unable to accept instruction from a supervisor.

**B. Treatment Records**

The pertinent medical treatment records show the following. Plaintiff's memorandum provides a thorough summary of the mental status examinations performed over the years. *See* Doc. 9-1, at 2-8. As that summary shows, Plaintiff consistently reported anxiety, sometimes reported depression, appeared anxious during some of the evaluations, and was hospitalized in 2015 following a suicide attempt brought on by a major depressive episode. She was taking medications for her mental health conditions throughout the years from 2014 to 2020, including, at various times, Klonopin, Ambien, Wellbutrin, Paxil, Vistaril, Ativan, Adderall, and Prozac. Her most frequent complaint was being afraid to go out and to be around other people. She also saw a counselor at regular intervals and occasionally reported suicidal thoughts. However, most of the time her mood was described as euthymic and stable, and she showed no difficulties with memory, attention, and concentration.

**C. Opinion Evidence**

Dr. Santarpia, a psychologist, conducted a consultative psychiatric examination on February 24, 2016. Plaintiff told Dr. Santarpia that she had been diagnosed with social anxiety disorder and major depressive disorder and was seeing a counselor and taking medication. She reported difficulty sleeping and infrequent episodes of depression, but said she had always felt uncomfortable around others. During the examination, Plaintiff appeared cooperative and responsive and her affect was full and appropriate. She also demonstrated intact attention, concentration, and recent and remote memory. Plaintiff said that she could take care of her personal needs, household chores, and shopping. Dr. Santarpia concluded that Plaintiff could understand and follow simple directions and instructions, perform simple tasks independently, maintain attention, concentration, and a regular schedule, deal with complex tasks, relate adequately to others, and deal with stress. She did, however, have a mild limitation in making appropriate decisions. (Tr. 593-97).

Dr. Juriga, a state agency psychologist, reviewed the records through March 2, 2016, and concluded that Plaintiff had a reduced ability to get along with coworkers and the public but could deal with brief and superficial contact with them. She could also handle ordinary levels of supervision in a work setting, and had moderate limitations in a number of work-related areas, including dealing with detailed instructions, maintaining attention and concentration for extended periods, maintaining regular attendance, and completing a normal workday and work week with interruption from psychologically-based symptoms. (Tr. 252-56).

Diana Springer, a social worker who provided counseling services to Plaintiff for a number of years, completed a mental medical source statement on December 9, 2020. She noted that Plaintiff presented with an anxious and depressed affect and that she experienced various physical symptoms including excessive perspiration and muscle tension when in the presence of others. Using a scale of 1-5 to rate Plaintiff's functional abilities, with three being unable to perform the activity from 11-20% of a workday and four being unable to do so for more than 20% of the time, Ms. Springer concluded that Plaintiff rated a three in the areas of dealing with simple instructions and tasks, sustaining an ordinary routine, making simple workplace decisions, and interacting with the public, but rated a four (or, in some cases a five, meaning that she could not do the activity at all) in areas like maintaining attention and concentration for two-hour segments, working in proximity to others, completing a normal workday or work week without interruption from psychologically-based symptoms, performing at a consistent pace without an unreasonable number of rest periods, accepting routine supervision, responding to changes in the work setting, and dealing with work stress. Ms. Springer also thought that Plaintiff would be off task more than 30% of the time and would miss more than four days of work per month. (Tr. 1348-52).

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S.

> 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. Selective Reading of the Evidence

As her first claim of error, Plaintiff asserts that the ALJ improperly evaluated Ms. Springer's opinion. Although the ALJ discounted the opinion for, among other reasons, its inconsistency with the treatment notes, Plaintiff argues that the ALJ cited only the relatively normal findings made during treatment and ignored the evidence that supported Ms. Springer's conclusions. She points to the findings that she suffered from, among other things, an anxious mood, poor sleep, tearfulness, fearfulness, sweating, and irritability or dysphoria, and argues that because the ALJ did not cite to any of these findings or to her 2015 hospitalization, he must have "cherry-picked" the evidence in order to support his ultimate conclusions. In response, the Commissioner argues that the ALJ did mention and consider the findings which Plaintiff claims were disregarded, and that Plaintiff has not shown that she had mental limitations that were greater than those found by the ALJ as part of residual functional capacity finding.

In his decision, the ALJ summarized the pertinent mental health treatment records, noting various negative comments about Plaintiff's judgment, her anxiety, her sleeping difficulties, her episodes of dysphoria and hopelessness, her depression, and her irritability. He also recounted the particulars of her 2015 hospitalization. (Tr. 646-50). Additionally, he recited the positive findings, including the fact that Plaintiff's memory and concentration were typically described as grossly intact and that she often had a euthymic mood and reported improvement at times with changes in her medication. *Id*. Turning to the opinion evidence, the ALJ gave partial weight to Dr. Santarpia's conclusions, pointing out that the examination findings she made did "not sharply differ from the examination findings of mental status examinations performed at Horizon," but concluding that Plaintiff was more limited than indicated by Dr. Santarpia. (Tr. 651). He then considered Dr. Juriga's opinion, giving it great weight because it was consistent with the relatively mild findings made during mental status examinations. (Tr. 652). Finally, he discounted Ms. Springer's opinions, giving them limited weight because they were largely inconsistent with the findings from the mental status examinations. In support of this conclusion, the ALJ reasoned that

> the claimant has reported depression or anxiety at mental status examinations, yet her examination findings are minimal.... The claimant is consistently described as

> cooperative and pleasant. She exhibits adequate hygiene and good eye contact. Most notably, the claimant's cognition has been described as intact and at times, grossly intact, but has no mention of any attention, concentration, or memory deficits.

*Id.*

Plaintiff's argument rests on the proposition that this method of analysis amounts to improper "cherry-picking" of the evidence. As this Court has explained,

> the ALJ may not "cherry pick" evidence. *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)). "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin,* No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

*Javon W. v. Comm'r of Soc. Sec.*, 629 F. Supp. 3d 62, 67 (W.D.N.Y. 2022). But that is not what happened here. As the Commissioner points out, the ALJ did not ignore those findings from the mental status exams which supported limitations on Plaintiff's mental functioning; rather, he actually relied on them to some extent in determining that Dr. Santarpia painted too rosy a picture of Plaintiff's ability to function in the workplace. He included all of those findings in his summary of the evidence, but found that the various essentially normal findings, which specifically addressed workplace functions like memory, attention, and concentration, provided support for Dr. Juriga's conclusions. Simply put, the record does not reflect the type of impermissible "cherry-picking" which has been criticized by this and other courts, and Plaintiff's first claim of error therefore lacks merit.

**B. Weighing the Opinion Evidence**

Plaintiff's second contention is that the ALJ erred by purporting to give great weight to the opinion of the state agency psychologist, Dr. Juriga but then ignoring those portions of the opinion which limited Plaintiff's contact with coworkers and which indicated she would be off task due to her moderate limitation in maintaining concentration, attention, persistence, and pace. She also contends that it was error for the ALJ to have preferred Dr. Juriga's opinion over that of Ms. Springer, a treating source. The Commissioner asserts, to the contrary, that the ALJ need

not have adopted every single one of Dr. Juriga's conclusions, especially when there was evidence to support a finding of lesser limitations in some areas (like interacting with coworkers), that, in any event, the jobs identified by the vocational expert involved only occasional interactions with coworkers, and that the ALJ had a substantial basis for assigning greater weight to Dr. Juriga's opinion than to Ms. Springer's.

The Court has already set forth much of the ALJ's reasoning for giving greater weight to Dr. Juriga's opinion than to Ms. Springer's, and given the fact that the ALJ based his decision on substantial evidence in the record, the Court's finds no error in the way in which he weighed the various expert opinions. As to the other portion of this argument - that the ALJ inconsistently gave great weight to Dr. Juriga's opinion yet failed to incorporate some of that opinion's limitations into the residual functional capacity finding - the Court finds no error as well. Dr. Juriga found a moderate limitation in Plaintiff's ability to work in coordination with or in proximity to others and to get along with them, and, as the Commissioner points out, the jobs identified by the vocational expert require only occasional interaction with coworkers, so even if the ALJ erred by failing to include this limitation in the residual functional capacity finding, such error was harmless. Dr. Juriga also found moderate limitations in the areas of maintaining attention and concentration for extended periods and dealing with work stress, but, as to the former, all of the mental status examinations indicated that Plaintiff had no deficits in memory, attention, or concentration, and she testified that she could maintain attention and concentration for periods of time. The ALJ also limited her to simple, routine tasks, which would accommodate some of the limitations expressed in Dr. Juriga's opinion, and at least one of these jobs, photocopy machine operator, is also not performed at production pace, which is an accommodation for someone who has difficulty handling work stress. *See, e.g., Wright v. Kijakazi*, 2023 WL 6308043 (E.D.N.Y. Sept. 28, 2023). There being little, if any, inconsistency between the limitations contained in the key hypothetical question posed to the vocational expert and the restrictions endorsed by Dr. Juriga, the Court finds no merit in this second claim of error.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9), **GRANTS** the Commissioner's motion (Doc. 12), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**